CARROLL *v.* RAGSDALE *et al.* commissioners; *et vice versa.*

Nos. 13716, 13717. MAY 14, 1914.

120

*Howard, Henson & Howard,* for plaintiff.

*Spalding, Sibley, Troutman & Brock, E. H. Sheats, W. S. Northcutt,* and *Ellis G. Arnall, attorney-general,* contra.

DUCKWORTH, Justice. The controlling question presented by the main bill of exceptions will be answered by a proper construction of the 1925 amendment as amended by the 1927 act, the particular language requiring interpretation and construction being: "The compensation of court bailiffs as fixed by the grand jury shall be $200 per month, provided the commissioners of roads and revenues, or other authority having control of the county finances of such counties, shall first approve the payment of such salaries." In construing a statute the obvious intention of the legislature will control and must be given effect. Seeking secret legislative meanings at variance with the language used is a perilous undertaking which is quite as apt to lead to an amendment of the law by judicial construction as it is to arrive at the actual thought in the legislative mind. 25 R. C. L. 961, § 217. But where an ambiguity exists either because of uncertainty in the meaning of words, conflicts with previous laws, or conflicts between different clauses in the same statute, courts should look beyond the verbiage and discover the intent. While all parts of the statute should be preserved, yet a cardinal rule of construction is that the legislative intent shall be effectuated, even though some verbiage may have to be eliminated. The legislative intent will prevail over the literal import of the words. *Washington* v. *Atlantic Coast Line Railroad Co.,* 136 *Ga.* 638 (71 S. E. 1066, 38 L. R. A. (N. S.) 867); *Youmans* v. *State,* 7 *Ga. App.* 101 (66 S. E. 383); United States *v.* Farenholt, 206 U. S. 226 (27 Sup. Ct. 629, 51 L. ed. 1036); Pickett *v.* United States, 216 U. S. 456 (30 Sup. Ct. 265, 54 L. ed.

566) ; American Security & Trust Co. *v.* District of Columbia, 224 U. S. 491 (32 Sup. Ct. 553, 56 L. ed. 856) ; State *v.* Pay, 45 Utah, 411 (146 Pac. 300, Ann. Cas. 1917E, 173) ; 25 R. C. L. 967, § 222. The statute must be examined as a whole, and its different provisions reconciled if possible. *Cairo Banking Co.* v. *Ponder,* 131 *Ga.* 708 (63 S. E. 218) ; *Roberts* v. *State,* 4 *Ga. App.* 207 (60 S. E. 1082) ; State *v.* Burnett, 173 N. C. 750 (91 S. E. 597) ; Board of Supervisors *v.* Cox, 155 Va. 68 (156 S. E. 755) ; J. E. Moss Iron Works *v.* Jackson County Court, 89 W. Va. 367 (109 S. E. 343). The general scheme and purpose of the legislation is a proper criterion for the construction thereof. *Singleton* v. *Close,* 130 *Ga.* 716 (61 S. E. 722) ; *Pennington* v. *Douglas, Augusta & Gulf Railway Co.,* 3 *Ga. App.* 665 (3) (60 S. E. 485).

With the aid of these rules of construction we now proceed to a consideration of the portion of the statute here involved. In the outset we look to the original act of 1879. The purpose of the original together with all amendments was to provide a scheme or plan for compensating court bailiffs. That act together with all amendments prior to the amendment of 1925, which brought in for the first time the language upon which the present case is based, reveals unmistakably a legislative intent to effectuate three definite purposes, namely: (1) to fix by law a maximum for such compensation; (2) to vest in the county authorities of each county the right to determine the amount of compensation in that county, not to exceed such maximum; and (3) to authorize and require the county authorities to re-examine the question of compensation and fix the amount once each year. To justify a construction of the amendment here involved that would discard these fixed principles of the legislation, there must be found in that amendment language which clearly manifests a legislative intent to depart from these policies. In search of such language we have painstakingly scrutinized the amendment word by word. It retains the principle of authorizing the county authorities to fix the compensation by providing that this shall be done by the grand jury, and by its provisions there is brought into the law for the first time the county authority having charge of county finances. Upon these authorities is conferred the power to approve or disapprove the payment of the salary of $200 per month therein provided for. In thus giving authority to approve or disapprove the payment of

the salary stated and in making the fixing of that amount contingent upon such approval, controlling authority for fixing the compensation is by the terms of the amendment retained in the local county officials.' But the plaintiff contends, that while the county authorities are empowered to determine whether or not the amendment shall become effective as law, yet this power can be exercised once and only once, and that the action of the county authorities in approving "payments" on September 7, 1927, had the effect of putting the law in operation, and that it remains of force without any further approval on the part of such county authorities. If this contention is sound, there has been a departure from the legislative policy of having the compensation fixed each year. A ruling that such legislative intent exists must find support, if it is supported at all, in the following language of the amendment: "shall first approve the payment of such salaries." Significantly the approval referred to is not approval of the amendment, but instead is approval of "the payment." It would have been legal and in harmony with legislative practice to provide that the amendment would become effective or operative upon its approval by the county authorities. But a provision for such authorities at a given time to discharge not only a duty resting upon them, but also a duty imposed upon their successors, to exercise a discretion and judgment in expending public moneys, has no support in law or practice. Had the amendment fixed unconditionally the amount of compensation it would thereupon, and without more, have become a legal charge against the county, payment of which would have been authorized and demanded without further approval. However, since the law fixing such salaries is expressly conditioned upon the approval of payment thereof by the county authorities, it imposes upon those persons constituting such county authorities the duty to exercise their own judgment in deciding the amount to be paid from the public treasury. This duty can neither be delegated nor usurped. The payments must be made from available funds each year, and only the county authorities in charge of county finances during that year are authorized to approve such payment. An approval of payment in 1927 will not authorize payments in 1932 and other years covered by this suit. Therefore the amendment must be construed to require the approval of payment each year as a necessary step in the fixing of such salaries.

At this point it might appear that when the county authorities failed to approve salaries of $200 per month there is no way provided by law for paying the court bailiffs any amount. Such a view, however, fails to take into account the policy of the law of fixing only a maximum and authorizing compensation to be fixed at an amount not exceeding that maximum. Beyond any doubt whatever the legislative intent to compensate such bailiffs is clearly manifest. Bailiffs are essential to the dispatch of court business; and it is the duty of the court, by application of the rules of construction hereinbefore stated, to effectuate that legislative intent by eliminating, restricting, or expanding the verbiage of the statute where necessary. Accordingly, the amount of salary as stated in the amendment is construed to mean the maximum, and the authority to approve the payment of the maximum includes authority to approve any other amount not to exceed that maximum. The petition showing that the county authorities had not approved payment of any of the amounts sought to be recovered, it was fatal in this respect, and was properly dismissed on demurrer.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*